IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 4:04CR3078 |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| LAURA GUTIERREZ, | ) | |
| | ) | |
| Defendant. | ) | |

Previously, I have outlined the law on departures in cases where a defendant is alleged to be a critical caretaker of a dependent person. See, e.g., United States v. Bailey, 369 F. Supp.2d 1090 (D. Neb. 2005) (After his conviction, on a guilty plea, of possession of child pornography, defendant moved for departure. Following a departure from criminal history category II to criminal history category I, the court granted an additional 8-level departure, concluding that a probationary sentence was appropriate because the benefit to the public of incarceration would be outweighed by the harm that incarceration would cause to defendant's nine-year-old daughter). I apply those principles in this case, and grant the defendant's motion for departure.

*The Law*

Following Bailey, and construing 18 U.S.C § 3553(a) (factors to be considered at sentencing), U.S.S.G. § 5H1.6 (family ties are ordinarily not relevant to sentencing), and U.S.S.G. § 5K2.0 (departures outside the "heartland" of cases are authorized), the law applicable to these kinds of cases can properly be summarized as follows:

* A departure from the advisory Sentencing Guidelines may be warranted when a dependent person (like the defendant's adult brother) has a serious illness or condition, the defendant's

>     presence is critical to that person's care, and the defendant's presence cannot reasonably be duplicated by using other providers.
>
> \*   For a departure from the advisory Guidelines to be warranted based on the serious illness or condition of a dependent person, there must be reasonable assurances that the defendant is not dangerous.
>
> \*   The more significant the crime, as objectively measured by the advisory Guidelines and otherwise, the less likely it is that a departure is proper based on the dependent person's serious illness or condition.
>
> \*   The extent of a departure based on the dependent person's serious illness or condition must be reasonable, and that is typically determined by reference to other cases. The general rule of thumb is that a departure sentence should always include some type of restraint in prison, in jail, or by use of home confinement.

### *The Facts*

The defendant's adult brother is a ventilator-dependent quadriplegic who is severely depressed as a result of his devastating injury. Together with the defendant's mother (who is a diabetic and who works outside the home for meager wages) and a nurse (who is paid by Medicare and who works days Monday through Saturday), the defendant provides round the clock health care to her brother. (*See* the DVD taken by the Federal Public Defender showing a "day in the life" of the brother and the defendant's care of the young man.) The man who fathered the defendant and her brother does not live with the family and provides no support.

Because the defendant's mother does not speak English, the defendant makes most of the necessary health care arrangements for her brother. In addition, because no nurse is available in the evening hours and all day on Sunday, and particularly

-2-

because the defendant relies upon a ventilator, the defendant alternates with defendant's mother looking after the brother each night and all day on Sunday. For example, the defendant sometimes sleeps in the brother's room so she can reinsert a trachea tube that dislodges from time to time without warning during her brother's sleep.

The nurse believes that the defendant's assistance is critical. The defendant's dependent brother says the same thing. A well-regarded clinical psychologist, who conducted an on-site investigation in California for the defense, states that the defendant's care is both unique and central to the continued health of the brother. *See* the detailed report dated May 23, 2006 authored by Dr. Mario J. Scalora.

Particularly because of the brother's serious mental health issues which flow from his devastating physical problems and the defendant's unique bond with her brother, I find as fact that the defendant's assistance cannot be replaced by another person. I also find that her aid is critical to the young man's survival.

In this regard, Dr. Scalora, who describes the defendant as "her brother's anchor[,]" is of the opinion that imprisonment of the defendant and her concomitant absence is "likely" to impose "serious and exceptional negative effects" on the brother's "physical and mental well-being." (Dr. Scalora's Report at 4-5.) I have confidence in Dr. Scalora. He is not prone to exaggeration.

The defendant, a young woman in her twenties, is charged with, and has admitted to, serving as a "mule" for 3.8 pounds of drugs. Essentially, her crime involved aiding and abetting the possession (with intent to distribute) methamphetamine by another "mule." When arrested, the defendant was seated in the passenger seat of the rental car the two women were using to drive from Santa Rosa, California to Detroit, Michigan. The car had been rented by a third party.

The defendant has no criminal history. She suffers from a mental illness (Bipolar disorder, Type II) that is controlled by medication. She has no history of drug abuse. She has a high school education, and attended junior college for a time.

The defendant's crime took place on June 21, 2004. The traumatic injury to her brother occurred on September 18, 2004. Following her release in this case, and her brother's terrible injury, the defendant moved home.

Under the advisory Guidelines, the defendant's total offense level is 23 and her criminal history category is I. She received a 2-level reduction because of the safety-valve and another 2-level reduction for her limited role. Her custodial (prison) Guideline range is 46 to 57 months.

Dr. Scalora has served as a consultant to the Nebraska Highway Patrol regarding offenders and difficult risk assessment questions. Relying in part on that background, he states that because of "the lack of substance abuse" and because of the lack of "violent or criminal history . . .[,] Laura Gutierrez poses a rather limited risk to community safety if . . . alternatives to incarceration were considered and implemented." (Dr. Scalora's Report at 5.) I agree.

### *Departure Sentence*

A prison sentence of "time served" plus 5 years of supervised release with punitive and stringent conditions is appropriate. Those conditions will include, among other things, one year of home confinement to be served under electronic monitoring at defendant's costs.

The supervised release conditions will also include a "community service" requirement that the defendant live with her brother and provide him with at least 40 hours of care per week throughout the period of supervised release. While the

-4-

defendant will be permitted to work, she will still be required to devote 40 hours per week to the care of her brother on top of whatever work she may find. In a sense, I intend to shackle the defendant to her quadriplegic brother for five years.

In particular, I conclude that the benefit to public of incarcerating the defendant would be outweighed by the harm that the defendant's brother would suffer as a result of such incarceration. Given the desperate needs of the defendant's brother and the irreplaceable character of the defendant's care for, and relationship with, the brother, realizing that the defendant served as a "mule," with little knowledge of the underlying criminal activity, and appreciating that the defendant has no criminal record and no history of substance abuse, this sentence is not likely to undermine, but in fact will further, the purposes of the Guidelines and the statutory goals of sentencing.

Moreover, and while at the high end, the extent of the departure resulting from this below-Guidelines sentence is consistent with departures in similar cases. See, e.g., United States v. Haversat, 53 F.3d 335, 1995 WL 253173 (8th Cir.1995) (table) (severe psychiatric illness of wife of antitrust defendant justified downward departure where doctor testified that the defendant's care was an irreplaceable part of treatment plan; 5-level departure was warranted, but sentence should have imposed some type of confinement; on remand, district court imposed 4-month sentence followed by 4 months of home confinement and the court of appeals affirmed), cert. denied, 516 U.S. 1027 (1995); Bailey, 369 F. Supp.2d at 1103 (after a departure due to overstatement of criminal history from category II to category I, granting an additional departure of 8 levels and imposing a sentence of probation in a child pornography case because the defendant could not be replaced and was critical to his child's recovery from sexual abuse; $10,000 fine and home confinement under electronic monitoring imposed at defendant's costs); United States v. DeRoover, 36 F. Supp.2d 531, 532-33 (E.D.N.Y.1999) (granting 12-level departure and 5-month prison sentence for single mother of five convicted of possession of about a kilogram

of heroin based in large part upon the fact that elderly grandmother could not continue to care for the children and "[o]ne child suffers from 'separation anxiety' . . . . [and] has been under psychiatric observation") (Weinstein, J.); United States v. Wehrbein, 61 F. Supp.2d 958, 974-82 (D. Neb. 1998) (downward departure of 8 levels to avoid prison sentence for small-time drug trafficker was warranted due to special emotional and psychiatric needs of 11-year-old boy where defendant-father was irreplaceable, mother was incapable of caring for the child, and there were no other suitable custodians; home confinement under electronic monitoring at defendant's costs) (collecting cases and journal articles); United States v. Lopez, 28 F. Supp.2d 953, 955 (E.D. Pa.1998) (departing downward 6 levels in drug case where defendant's 7-year-old child was suffering from severe psychiatric illness and the defendant was the "only caregiver who has been able to make a substantial difference in Maria's life").

In many respects, this matter is sui generis. The advisory Guidelines are sufficiently flexible to account for the "one of a kind" quality of cases like this one. Accordingly,

IT IS ORDERED that the defendant's motion for departure (filing 124) is granted for the reasons stated herein but is otherwise denied.

May 26, 2006.   BY THE COURT:

  *s/Richard G. Kopf*
  United States District Judge